IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES R. ADAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Civil Case No.   05-817-DRH-PMF |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

### REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Plaintiff, James R. Adams, seeks judicial review of a final decision of the Commissioner of Social Security denying his July, 2003, applications for disability benefits and supplemental security income. These applications were denied following an administrative determination that Mr. Adams was not disabled; a decision that became final when the Appeals Council declined to review a decision reached by an Administrative Law Judge (ALJ). Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) and 42 U.S.C. §1383(c)(3). Pending at this time is plaintiff's motion for summary judgment (Doc. No. 14).

To receive disability benefits or supplemental security income, a claimant must be "disabled." A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A); 1382c(a)(3)(B), 1382c(a)(3)(D).

The Social Security regulations provide for a five-step sequential inquiry that must be followed in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520; 416.920. The Commissioner must determine in sequence: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets or equals one listed by the Commissioner, (4) whether the claimant can perform his or her past work, and (5) whether the claimant is capable of performing any work in the national economy. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000). If the claimant does not have a listed impairment but cannot perform his or her past work, the burden shifts to the Commissioner at Step 5 to show that the claimant can perform some other job. *Id.*

The ALJ evaluated plaintiff's claim through Step 5 of the sequential analysis, finding that plaintiff's serious medical conditions significantly interfered with his ability to perform basic work activities but did not meet or equal one of the impairments listed in the Social Security regulations. The ALJ further determined that despite his impairments, plaintiff retained the ability to perform a range of sedentary work. While he could perform the usual physical requirements of sedentary work, he was limited to work in a temperature and humidity controlled environment with only rare exposure to respiratory irritants and incidental exposure hazards. The ALJ decided that plaintiff was not disabled because he was still able to perform a significant number of systems surveillance monitor, inspector, assembler, and cashier jobs (R. 20-27).

Under the Social Security Act, a court must sustain the Commissioner's findings if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" of proof. The standard is satisfied by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Because the Commissioner of Social Security is responsible for weighing the evidence, resolving conflicts in the evidence, and making independent findings of fact, this Court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Id*. However, the Court does not defer to conclusions of law, and if the Commissioner makes an error of law or serious mistakes, reversal is required unless the Court is satisfied that no reasonable trier of fact could have come to a different conclusion. *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

### I.     Listing 3.02

Plaintiff challenges the ALJ's finding at Step 3 that his condition did not meet or equal a listed impairment. He argues that the ALJ did not discuss the listing in § 3.02 or consider whether his ailments, considered in combination, met or equaled the requirements of that particular listing. Plaintiff also argues that the ALJ had an obligation to call upon a medical expert for assistance before making this decision. Defendant argues that substantial evidence supports this aspect of the ALJ's decision.

The listings are contained in 20 C.F.R. pt. 404, Subpt. P, App. 1. They describe various physical and mental illnesses and abnormalities according to the particular body system that is affected. Subsection A of the listing for chronic pulmonary insufficiency is met with spirometry results showing that a person with chronic obstructive pulmonary disease has one-second forced expiratory volume ($FEV^1$) values and a maximum voluntary ventilation (MVV) value equal to or less than the values specified in a corresponding table. 20 C.F.R. § 404, Subpt. P, App. 1 § 3.02A (2005).

When the ALJ evaluated plaintiff's claim, a person of plaintiff's measured height (68 inches) met the listing in 3.02A with evidence of an $FEV^1$ value at or below 1.4 and an MVV value at or below 56. 20 C.F.R. § 404, Subpt. P, App. 1 § 3.02A (2005). Plaintiff's $FEV^1$ value was measured by spirometry at 1.57, which exceeds the listing level by .17 (R. 263, 242). Experts who reviewed this evidence decided that plaintiff's respiratory impairment did not meet or equal the listing for chronic pulmonary insufficiency (R. 46, 47, 48, 49).

After reviewing the medical evidence, the ALJ was unable to locate any medical finding that plaintiff's impairments, considered alone or in combination, met or equaled the requirements in the listings (R. 22).

When the medical evidence is not contradicted, ALJs may rely on transmittal forms prepared by physician reviewers. *Scheck v. Barnhart*, 357 F.3d 697, 700-01 (7th Cir. 2004). ALJs should mention the specific listings considered. Failure to do so, when combined with a "perfunctory analysis," requires remand. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

The medical evidence on this point is uncontradicted. The spirometry evidence shows that plaintiff's lungs were less obstructed than required to meet the criteria for § 3.02, and no medical expert reviewed the record and found that the combination of plaintiff's impairments met or equaled the listing for chronic pulmonary insufficiency. While the ALJ did not mention § 3.02, the specific listing for chronic pulmonary insufficiency, the analysis was not perfunctory. The ALJ's discussion shows that the necessary medical findings could not be located in the administrative record.

Plaintiff's suggestion that the ALJ should have developed evidence by consulting a medical expert is not supported by the authority cited. Title 20 C.F.R. § 404.1527(f)(2)(iii), does not require ALJs to consult medical experts under these circumstances. Because objective testing was

performed by plaintiff's physician, the ALJ could rationally determine that the available evidence was sufficient to permit comparison of test results with the listing criteria. In sum, the ALJ's Step 3 analysis is adequate and the finding is supported by substantial evidence

## II.     Credibility

Plaintiff argues that the ALJ made an improper credibility finding that ignores the requirements of Social Security Ruling 96-7p and 20 C.F.R. § 404.1529. Defendant argues that the ALJ rationally considered inconsistencies in the record and made a credibility determination that was not patently wrong.

ALJs must evaluate symptoms by considering the extent to which symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a). Statements about symptoms that could reasonably be caused by an impairment may not be disregarded solely because they are not substantiated by objective medical evidence. *Id*. Because ALJs are best positioned to judge a witness' truthfulness, credibility determinations will only be overturned when they are patently wrong. *Schmidt v. Barnhart*, 395 F.3d 737, 746-47 (7th Cir. 2005). ALJs must carefully consider an individual's statements about symptoms with the rest of the relevant evidence. SSR 96-7p. Because consistency is one strong indication that an individual's statements can be accepted as true, ALJs must compare statements made by an individual in connection with his claim, evaluate the consistency between such statements and with other information, and determine whether variations in the statements are explained. *Id*.

Plaintiff testified that he lost his last job because he used a nebulizer for breathing treatments several times during the workday. He smoked a pack of cigarettes a day for about 24 years. He quit twice: the first time was in February, 2004. He started smoking again almost six months later, in

August, 2004, and quit the second time in September, 2004. He described shortness of breath, wheezing, coughing, and fatigue. He explained that he used supplemental oxygen all the time, although his doctor gave him the flexibility to stop using supplemental oxygen if he was breathing okay while sitting without movement. He also described seizures, which were more likely to occur when he had a bad cough. He had two to five seizures per month, on average. During a seizure, he felt dizzy and light-headed. He became disoriented and incapacitated for two to three minutes and felt light-headed and confused for an additional 10 to 20 minutes (R. 391-409, 417-18).

Plaintiff's mother testified that plaintiff was easily winded. She estimated that plaintiff could walk to the end of the block and back, with a short rest. She explained that she had observed at least 12 -15 seizures over the past two and one-half years. She said plaintiff fell, his eyes rolled back, and his body jerked for about 3-4 minutes. Afterwards, he seemed to be in a daze. She said that plaintiff took care of his personal needs, helped care for his daughter, did some light housework at times, and usually napped during the day (R. 410 -417).

The ALJ discredited some of plaintiff's testimony after perceiving inconsistencies with other aspects of the record. She noted that plaintiff continued to smoke despite severe symptoms and physician recommendations to quit. She also noted conflicts between plaintiff's description of ongoing seizures and comments in a report prepared by Dr. Gomendoza, a treating physician, and said the record did not indicate that plaintiff used equipment prescribed for his obstructive sleep apnea (R. 24).

Plaintiff argues that the ALJ should have given more weight to his testimony because he described symptoms that are reasonably related to his medical diagnoses. The Court must decline this invitation to reweigh plaintiff's testimony.

Plaintiff also argues that the ALJ should not have disregarded symptoms on the basis that he continued to smoke. He claims that he "permanently quit in February of 2004" (Doc. No. 15, p. 13). Plaintiff was advised to stop smoking on many occasions. While he stopped smoking in February, 2004; he started smoking again about six months later (R. 397-98). The ALJ could logically question the credibility of some of plaintiff's testimony regarding his limitations based on his decision to start smoking again after not smoking for almost six months. Other aspects of the record also support the ALJ's credibility assessment. Reports prepared by plaintiff's physician indicate that he did not describe seizures during his clinic visits until September, 2003. At that time, plaintiff described episodes lasting a few seconds one time per month, with occasional cough syncope (R. 193, 194). In short, the ALJ rationally found some inconsistencies between plaintiff's testimony and other evidence describing his ailments. Under these circumstances, the ALJ's credibility assessment is not patently wrong.

### III.  Residual Functional Capacity

Plaintiff also argues that the ALJ's residual functional capacity assessment is not reliable because the ALJ failed to follow § 404.1523 and Social Security Ruling 96-8p, and played amateur doctor. Defendant argues that the ALJ considered plaintiff's combination of impairments and rationally assessed plaintiff's residual functional capacity on the basis of medical evidence and other evidence in the administrative record. In doing so, defendant believes the ALJ assessed plaintiff's ability to perform tasks in a competitive work environment.

Residual functional capacity (RFC) is an assessment of the most a person can do despite limitations caused by medically determinable physical and mental impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). ALJs are required to consider the combined impact of all impairments

throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B)(1996); 20 C.F.R. § 404.1523.

ALJs assess RFC by separately considering the person's ability to perform seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling. They also analyze residual functional capacity in terms of competitive workplace demands: a schedule equivalent to eight hours a day, five days a week. Social Security Ruling 96-8p.

When a treating physician restricts a patient's activities, an ALJ may not substitute his or her personal opinion about the claimant's medical condition for that of the claimant's physician. *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). That is, ALJs must be careful not to succumb to the temptation to play doctor. *Schmidt v. Sullivan*, 914 F.2d 117, 188 (7th Cir. 1990).

The ALJ decided that plaintiff retained the ability to perform sedentary work, as defined in the regulations, with the additional limitations of work in a temperature and humidity controlled environment, with only rare exposure to respiratory irritants and incidental exposure hazards (R. 24). Prior to making this assessment, the ALJ discussed evidence describing plaintiff's various ailments, including plaintiff's testimony and his mother's testimony regarding his limitations. The report adequately demonstrates that the combined effect of plaintiff's multiple impairments was considered throughout the disability determination. *Fox v. Heckler*, 776 F.2d 738, 740-42 (7th Cir. 1985). Furthermore, the ALJ assessed functional capacity on the basis of evidence in the record. The ALJ combined credible aspects of reports generated by state agency consultants with credible descriptions of symptoms of shortness of breath with exertion (R. 24). Hence, the Court is not persuaded that the ALJ interjected personal opinion or succumbed to the temptation to "play doctor."

However, the ALJ did not separately consider the impact of plaintiff's ailments on his ability to perform the strength demands that are crucial to the assessment. In particular, the ALJ did not determine what effect plaintiff's ailments had on his ability to sit, stand, walk, lift, and carry. Also, the ALJ did not evaluate plaintiff's functional abilities in light of the demands of a competitive work environment. The ALJ found that plaintiff suffers from chronic obstructive pulmonary disease, a seizure disorder, obstructive sleep apnea, and tobacco abuse. Plaintiff's symptoms may include seizures, disorientation, dizziness, shortness of breath, fatigue, coughing, and wheezing. Plaintiff took medication and used supplemental oxygen, which was prescribed for use 24 hours per day, especially when he was walking (R. 236, 271-72). The vocational expert explained that a person who requires constant access to supplemental oxygen is not able to perform a significant number of jobs in the competitive workforce (R.. 424-25). Hence, without specific findings regarding the effect of plaintiff's impairments on his plaintiff's ability to perform the functional demands of sedentary work on a schedule equivalent to eight hours a day, five days a week, the ALJ's functional capacity assessment cannot be reviewed. Remand for further articulation of the ALJ's residual functional capacity assessment is required. *See Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001)(reversing and remanding where ALJ failed to discuss all of the strength demands of sedentary work and whether the plaintiff could perform those demands on a regular and continuing basis).

Plaintiff also argues that the ALJ gave too much weight to evidence that he performed some light household chores. Defendant argues that the ALJ properly considered plaintiff's daily activities in evaluating his functional abilities. Because the ALJ's residual functional capacity assessment requires additional proceedings, this argument is not addressed.

**IV.    Step Five**

Plaintiff also challenges the ALJ finding that there are a significant number of sedentary jobs that he can perform. The Court should decline to review this aspect of the ALJ's decision, pending further clarification and articulation of the residual functional capacity assessment.

**V.    Conclusion**

IT IS RECOMMENDED that plaintiff's motion for summary judgment (Doc. No. 14) be GRANTED, as follows. The Commissioner's final decision denying James R. Adams' July, 2003, applications for disability benefits and supplemental security income should be REVERSED and REMANDED for further proceedings. On remand, the ALJ should reevaluate plaintiff's residual functional capacity and issue a new decision. The ALJ should consider the extent to which plaintiff's ailments restrict his ability to perform the strength demands required for sedentary work and consider whether plaintiff could perform those demands on a regular and continuing basis.

SUBMITTED:  **January 2, 2007.**

*s/ Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**